IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MICHELE KAMATTA,

    Plaintiff,

    v.                               CIVIL NO.: WDQ-14-3684

SYLVIA BURWELL, SECRETARY,
U.S. Department of Health and
Human Services,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Michele Kamatta sued Sylvia Burwell, the Secretary for the U.S. Department of Health and Human Services, for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Age Discrimination in Employment Act of 1967 ("ADEA").[2] Pending is Burwell's motion to dismiss Counts I and III of the complaint for failure to state a claim. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion will be granted.

---

[1] 42 U.S.C. §§ 2000e, *et seq.*

[2] 29 U.S.C. §§ 621, *et seq.*

I.  Background[3]

  A. The Plaintiff's Employment and Termination

In 2000, Kamatta began working for the U.S. Department of Health and Human Services ("HHS").[4] ECF No. 1 at ¶ 18. In 2009, Kamatta worked for HHS as a "Committee Management Specialist [] National Institutes of Health, National Institute of Allergy and Infectious Diseases, Division of Extramural Activities." Id. at ¶ 13. Mary Nuss was Kamatta's first level supervisor. Id. at ¶ 21.

Kamatta alleges that "[w]hile [she] was employed by HHS, she was continually subjected to discrimination by [] Nuss because of her race" and "age". Id. at ¶¶ 23-24. "Nuss regularly yelled at [] Kamatta when [] Kamatta would ask questions concerning her employment duties." Id. at ¶ 25. In December 2009, Nuss yelled, "[Y]ou are not performing well and just wait until we go over your performance plan!" Id. at ¶ 26. In "late September-early October 2010," Nuss "slammed a stack of papers against a desk and yelled at [] Kamatta for an error in

---

[3] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] Kamatta is an African American woman. ECF No. 1 at ¶ 16. She was born in 1958 and "was 54 years old at the time she filed her formal complaint of discrimination." Id. at 17.

copying records." *Id.* at ¶ 27.  On another occasion during that time, Nuss "pounded on her desk with her fist and yelled at [] Kamatta[,] threatening her that 'If this happens again you are DEAD MEAT!'" *Id.* at ¶ 28.  "When [] Nuss would yell at [] Kamatta, she would clench her body tightly, roll her eyes, and clench her mouth . . . [like] Nuss was getting ready for a physical fight." *Id.* at ¶ 29.

On or about October 16, 2010, Kamatta met with her second level supervisor, Dr. Marvin Kalt, to complain about Nuss's behavior.  ECF No. 1 at ¶ 30.  On January 13, 2011, Kamatta's 2010 performance review rated her as "Fully Successful" in performing her duties.  Id. at ¶ 31.  On July 17, 2011, Kamatta "received a within-grade increase based on her work performance being deemed at an acceptable level of competence." Id. at ¶ 31.  On February 10, 2012, Kamatta received a rating of "Fully Successful" on her 2011 performance review.  Id. at ¶ 34.  On April 15, 2012, Kamatta "received a 'ratings based' individual cash award."  Id. at ¶ 35.

In May 2012, Kamatta complained to Dr. Matthew Fenton[5] about Nuss's hostile behavior and that Nuss was "treating her

---

[5] "In January or February 2012, Dr. Kalt was replaced by Dr. Matthew Fenton as Director." ECF No. 1 at ¶ 33.

differently than other staff."[6]  ECF No. 1 at ¶ 36.  In June 2012, Kamatta told Fenton that "Nuss was yelling at her and harassing her on a daily basis."

On November 5, 2012, after Kamatta "ma[de] an error," Nuss yelled, "You are lucky you did not come in earlier this morning or else you would've been out the door!"  ECF No. 1 at ¶ 38.  On November 6, 2012, Kamatta made an informal complaint with an Equal Employment Opportunity ("EEO") officer "raising allegations of discrimination and hostile work environment." Id. at ¶¶ 10, 39.  On November 13, 2012, Nuss told Kamatta "in a threatening manner that another Committee member who was performing poorly would be asked to resign or otherwise management would 'think of a way of getting rid of him.'"  Id. at ¶ 40.

On December 5, 2012, Kamatta filed a formal complaint of discrimination.  ECF No. 1 at ¶¶ 10, 41.  On December 13, 2012, Nuss "placed [Kamatta] in a Performance Improvement Plan ("PIP") where [Kamatta] was told she could be terminated for future poor performance."  Id. at ¶ 42.  On December 21, 2012, Kamatta sent a letter to Nuss, "stating that the PIP was 'a form of harassment and intimidation.'"  Id. at ¶ 43.  On March

---

[6] Kamatta alleges, "[o]n information and belief, [that] no other employee or Committee member was yelled at or harassed by [] Nuss during [] Kamatta's time of employment."  ECF No. 1 at ¶ 49.

1, 2013, Nuss issued a Proposed Notice of Removal to Kamatta. *Id.* at ¶ 44. On March 5, 2013, Kamatta complained to management officials about "Nuss's harassment, intimidation, and discrimination . . . ." *Id.* at ¶ 45.

On April 23, 2013, John McGowan[7] "rendered a notice of termination" to Kamatta after "Nuss recommended . . . that [] Kamatta be terminated. ECF No. 1 at ¶¶ 46-47. Kamatta was immediately placed on administrative leave. *Id.* at ¶ 47. On May 3, 2013, "Kamatta was officially terminated." *Id.* at ¶ 48. "As a result of continued harassment and hostile work environment, [] Kamatta is being treated for high blood pressure, loss of sleep, anxiety, and stress." *Id.* at ¶ 51.

On May 29, 2013, Kamatta "petitioned the U.S. Equal Employment Opportunity Commission for a hearing on her discrimination and retaliation claims." ECF No. 1 at ¶ 10. On July 25, 2013, Kamatta moved to amend her complaint to include allegations that her termination was the result of retaliation. *See* ECF No. 22-1 at 5. "When []HHS opposed Kamatta's motion to amend as untimely, . . . Kamatta withdrew her request for a hearing and sought instead a final agency decision on the merits of her complaint . . . ." *Id.* at 6. On June 16, 2014, HHS issued a Final Agency Decision. ECF No. 1 at ¶ 10.

---

[7] McGowan was Nuss's supervisor. ECF No. 1 at ¶ 46.

B. Procedural History

On September 12, 2014, Kamatta sued Burwell in the United States District Court for the District of Columbia. ECF No. 1. Kamatta alleged five causes of action: discriminatory termination based on race (Count I), hostile work environment based on race (Count II), discriminatory termination based on age (Count III), hostile work environment based on age (Count IV), and retaliation (Count V). ECF No.1 at 7-9. On November 25, 2014, the case was transferred to this Court. ECF No. 10.

On February 20, 2015, Burwell moved to dismiss Counts I and III for failure to exhaust administrative remedies under Federal Rule of Civil Procedure 12(b)(1)[8] and for failure to state a claim for which relief can be granted under Rule 12(b)(6). ECF No. 22. On March 18, 2015, Kamatta responded in opposition. ECF No. 25. On April 17, 2015, Burwell replied. ECF No. 30.

II. Analysis

A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action can be dismissed for failure to state a claim upon which relief can be granted.

---

[8] In her reply, Burwell abandoned her Rule 12(b)(1) argument based on the Fourth Circuit's holdings in *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) and *Sydor v. Fairfax Cnty.*, 681 F.3d 591, 595 (4th Cir. 2012). See ECF No. 30 at 4 ("DHHS will not continue to press forward with the exhaustion argument."). Accordingly, the Court will not address the parties' subject matter jurisdiction arguments and will move directly to the motion to dismiss under Rule 12(b)(6).

Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it

has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

   B. Burwell's Motion to Dismiss

At trial, a plaintiff can prove her employer's discrimination through one of two methods. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, she may use "any direct or indirect evidence relevant to and sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted). Absent direct evidence of discrimination, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). To establish a *prima facie* case of employment discrimination, Kamatta must show 1) she is a member of a protected class, 2) she suffered an adverse employment action, 3) at the time of the action, she was meeting her employer's legitimate expectations, and 4) she was treated differently from other similarly situated persons who were not members of the protected class. *Hill*, 354 F.3d at 285; *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 394 (D. Md. 2004).

Burwell asserts that Counts I and III must be dismissed because Kamatta has not pled a *prima facie* case for discrimination; namely, "Kamatta has put forth no evidence that similarly situated employees outside of her protected classes of race and age were treated differently than she." ECF No. 22-1 at 16-17. Kamatta argues that a plaintiff need not allege a *prima facie* case of discrimination to survive a motion to dismiss. ECF No. 25 at 9.

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515 (2002), the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." Applying *McDonnell Douglas* to Rule 12(b)(6) motions would establish a "heightened pleading standard" contravening Rule 8(a)(2). *Id.* at 512. *Swierkiewicz*, however, was decided before *Iqbal* and *Twombley*.

In *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 583 (4th Cir. 2015), the Fourth Circuit reexamined the pleading standard for discrimination cases in light of *Iqbal* and *Twombly*. McCleary-Evans had applied for two positions in the Maryland Highway Administration's Environmental Compliance Division. *Id.* "Despite her prior work experience and education, which she alleged made her 'more than qualified' for the two positions,

she was not selected for either position. Instead, as the complaint asserted, 'The positions in question were filled by non-Black candidates.'" *Id.* McCleary-Evans alleged that she was not hired because her applications were

> subject to a review panel significantly influenced and controlled by . . . Gregory Keenan, a White male in the Office of Environmental Design ('OED') who worked under the supervision of OED Director, Sonal Sangahvi, a non-Black woman . . . [and] [d]uring the course of her interview, and based upon the history of hires within OED, . .. both Keenan and Sangahvi predetermined to select for both positions a White male or female candidate.

*Id.* She also alleged that, "'although African American candidates had been among the selection pool,' 'Keenan and Sangahvi, for reasons of race and gender, overlooked the African American candidates to select White male, preferably, and White female candidates.'" *Id.* at 583-84. The district court granted the defendant's motion to dismiss the complaint because McCleary-Evans had not "stated facts sufficient to meet the pleading requirements as to the fourth prong" of *McDonnell Douglas*. *Id.* at 584.

On appeal, the Fourth Circuit found that *Swierkiewicz* remained binding precedent, and the "the district court erred in its analysis by requiring [the plaintiff] to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." *Id.* at 585. However, the Fourth Circuit held that *McCleary-Evans* was properly dismissed under the

10

standards of *Twombly*. The Fourth Circuit reasoned that, although a plaintiff need not plead a *prima facie* case of discrimination, she must still state a claim that "is *plausible* on its face." *McCleary-Evans*, 780 F.3d at 585 (quoting *Iqbal*, 556 U.S. at 678). Therefore, to state a plausible claim of discrimination, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *Id*.

McCleary-Evans failed to allege that "the Highway Administration 'fail[ed] or refus[ed] to hire' her '*because of* [her] race . . . [or] sex.'" *Id*. (alterations in original).

> [S]he alleged that "[d]uring the course of her interview, and based upon the history of hires within [the Office of Environmental Design], . . . both Keenan and Sangahvi predetermined to select for both positions a White male or female candidate." But she alleged no factual basis for what happened "during the course of her interview" to support the alleged conclusion. The allegation that the Highway Administration did not hire her because its decision makers were biased is simply too conclusory. Only speculation can fill the gaps in her complaint— speculation as to why two "non-Black candidates" were selected to fill the positions instead of her. While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias. McCleary-Evans can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions. In short, McCleary-Evans' complaint "stop[ped] short of the line between possibility and plausibility of entitlement to relief."

*Id.* at 585-86 (quoting *Iqbal*, 556 U.S. at 678-79) (internal citations omitted).

In this case, Kamatta is correct in asserting that she is not required to plead the fourth prong of a *prima facie* case of discrimination. *See* ECF No. 25 at 9. However, Kamatta has failed to state a plausible claim and Counts I and III must be dismissed. Like McCleary-Evans, Kamatta has failed to allege that the HHS terminated her *because of* her race or age.[9] The complaint details Nuss's negative behavior toward McCleary-Evans spanning several years. However, Kamatta's only allegations that support Nuss's *motivations* for these actions are that Nuss "treat[ed] her differently than other staff"[10] and "no other employee or Committee member was yelled at or harassed by [] Nuss during [] Kamatta's time of employment."[11] Kamatta provides no information about the race or ages of these staff members. Kamatta has "alleged no factual basis . . . to support [her]

---

[9] In Title VII suits, a plaintiff must allege sufficient facts to establish that race was a *motivating factor* for the adverse employment action. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). In suits under the ADEA, a plaintiff must allege sufficient facts showing that age was a but-for cause of the termination. *See Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176-77 (2009).

[10] ECF No. 1 at ¶ 36.

[11] ECF No. 1 at ¶ 49. Kamatta also included the conclusionary statement that the "Defendant treated other similarly situated employees outside her protected class more favorably." *See id.* at ¶¶ 55, 66.

alleged conclusion" that Nuss's actions and Kamatta's termination were motivated by race and age bias. *McCleary-Evans*, 780 F.3d at 585-86. "Only speculation can fill the gaps in her complaint . . . ." *Id.* Accordingly, the Court must dismiss Counts I and III of the complaint.

III. Conclusion

For the reasons stated above, the Defendant's motion to dismiss Counts I and III of the complaint under Rule 12(b)(6) will be granted.

_7/27/15_____                    _____
Date                                      William D. Quarles, Jr.
                                          United States District Judge