IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MICHELE KAMATTA,

    Plaintiff,

    v.                                     CIVIL NO.: WDQ-14-3684

SYLVIA BURWELL, SECRETARY,
U.S. Department of Health and
Human Services,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Michele Kamatta sued Sylvia Burwell, the Secretary for the U.S. Department of Health and Human Services, for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Age Discrimination in Employment Act of 1967 ("ADEA").[2] Pending is Kamatta's motion for reconsideration and to file an amended complaint. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion will be denied.

---

[1] 42 U.S.C. §§ 2000e, et seq.

[2] 29 U.S.C. §§ 621, et seq.

I.  Background[3]

  A. The Plaintiff's Employment and Termination

In 2000, Kamatta began working for the U.S. Department of Health and Human Services ("HHS").[4] ECF No. 1 at ¶ 18. In 2009, Kamatta worked for HHS as a "Committee Management Specialist [] National Institutes of Health, National Institute of Allergy and Infectious Diseases, Division of Extramural Activities." *Id.* at ¶ 13. Mary Nuss was Kamatta's first level supervisor. *Id.* at ¶ 21.

Kamatta alleges that "[w]hile [she] was employed by HHS, she was continually subjected to discrimination by [] Nuss because of her race" and "age". *Id.* at ¶¶ 23-24. "Nuss regularly yelled at [] Kamatta when [] Kamatta would ask questions concerning her employment duties." *Id.* at ¶ 25. In December 2009, Nuss yelled, "[Y]ou are not performing well and just wait until we go over your performance plan!" *Id.* at ¶ 26. In "late September-early October 2010," Nuss "slammed a stack of papers against a desk and yelled at [] Kamatta for an error in copying records." *Id.* at ¶ 27. On another occasion during that

---

[3] The facts are from Kamatta's original complaint. ECF No. 1. The additional facts provided in the amended complaint and whether they merit reconsideration of the Court's prior dismissal will be addressed under procedural history and in the Court's analysis.

[4] Kamatta is an African American woman. ECF No. 1 at ¶ 16. She was born in 1958 and "was 54 years old at the time she filed her formal complaint of discrimination." *Id.* at 17.

time, Nuss "pounded on her desk with her fist and yelled at []
Kamatta[,] threatening her that 'If this happens again you
are DEAD MEAT!'" Id. at ¶ 28. "When [] Nuss would yell at []
Kamatta, she would clench her body tightly, roll her eyes, and
clench her mouth . . . [like] Nuss was getting ready for a
physical fight." Id. at ¶ 29.

On or about October 16, 2010, Kamatta met with her second level supervisor, Dr. Marvin Kalt, to complain about Nuss's behavior. ECF No. 1 at ¶ 30. On January 13, 2011, Kamatta's 2010 performance review rated her as "Fully Successful" in performing her duties. Id. at ¶ 31. On July 17, 2011, Kamatta "received a within-grade increase based on her work performance being deemed at an acceptable level of competence." Id. at ¶ 31. On February 10, 2012, Kamatta received a rating of "Fully Successful" on her 2011 performance review. Id. at ¶ 34. On April 15, 2012, Kamatta "received a 'ratings based' individual cash award." Id. at ¶ 35.

In May 2012, Kamatta complained to Dr. Matthew Fenton[5] about Nuss's hostile behavior and that Nuss was "treating her differently than other staff."[6] ECF No. 1 at ¶ 36. In June

---

[5] "In January or February 2012, Dr. Kalt was replaced by Dr. Matthew Fenton as Director." ECF No. 1 at ¶ 33.

[6] Kamatta alleges, "[o]n information and belief, [that] no other employee or Committee member was yelled at or harassed by []

3

2012, Kamatta told Fenton that "Nuss was yelling at her and harassing her on a daily basis."

On November 5, 2012, after Kamatta "ma[de] an error," Nuss yelled, "You are lucky you did not come in earlier this morning or else you would've been out the door!" ECF No. 1 at ¶ 38. On November 6, 2012, Kamatta made an informal complaint with an Equal Employment Opportunity ("EEO") officer "raising allegations of discrimination and hostile work environment." Id. at ¶¶ 10, 39. On November 13, 2012, Nuss told Kamatta "in a threatening manner that another Committee member who was performing poorly would be asked to resign or otherwise management would 'think of a way of getting rid of him.'" Id. at ¶ 40.

On December 5, 2012, Kamatta filed a formal complaint of discrimination. ECF No. 1 at ¶¶ 10, 41. On December 13, 2012, Nuss "placed [Kamatta] in a Performance Improvement Plan ("PIP") where [Kamatta] was told she could be terminated for future poor performance." Id. at ¶ 42. On December 21, 2012, Kamatta sent a letter to Nuss, "stating that the PIP was 'a form of harassment and intimidation.'" Id. at ¶ 43. On March 1, 2013, Nuss issued a Proposed Notice of Removal to Kamatta. Id. at ¶ 44. On March 5, 2013, Kamatta complained to

---

Nuss during [] Kamatta's time of employment." ECF No. 1 at ¶ 49.

management officials about "Nuss's harassment, intimidation, and discrimination . . . ."  *Id.* at ¶ 45.

On April 23, 2013, John McGowan[7] "rendered a notice of termination" to Kamatta after "Nuss recommended . . . that [] Kamatta be terminated.  ECF No. 1 at ¶¶ 46-47.  Kamatta was immediately placed on administrative leave.  *Id.* at ¶ 47.  On May 3, 2013, "Kamatta was officially terminated."  *Id.* at ¶ 48. "As a result of continued harassment and hostile work environment, [] Kamatta is being treated for high blood pressure, loss of sleep, anxiety, and stress."  *Id.* at ¶ 51.

On May 29, 2013, Kamatta "petitioned the U.S. Equal Employment Opportunity Commission for a hearing on her discrimination and retaliation claims."  ECF No. 1 at ¶ 10.  On July 25, 2013, Kamatta moved to amend her complaint to include allegations that her termination was the result of retaliation.  *See* ECF No. 22-1 at 5.  "When [] HHS opposed Kamatta's motion to amend as untimely, . . . Kamatta withdrew her request for a hearing and sought instead a final agency decision on the merits of her complaint . . . ."  *Id.* at 6.  On June 16, 2014, HHS issued a Final Agency Decision.  ECF No. 1 at ¶ 10.

---

[7] McGowan was Nuss's supervisor.  ECF No. 1 at ¶ 46.

B. Procedural History

On September 12, 2014, Kamatta sued Burwell in the United States District Court for the District of Columbia. ECF No. 1. Kamatta alleged five causes of action: discriminatory termination based on race (Count I), hostile work environment based on race (Count II), discriminatory termination based on age (Count III), hostile work environment based on age (Count IV), and retaliation (Count V). ECF No.1 at 7-9. On November 25, 2014, the case was transferred to this Court. ECF No. 10.

On February 20, 2015, Burwell moved to dismiss Counts I and III for failure to exhaust administrative remedies under Federal Rule of Civil Procedure 12(b)(1)[8] and for failure to state a claim for which relief can be granted under Rule 12(b)(6). ECF No. 22. On July 27, 2015, the Court dismissed Counts I and III because Kamatta failed to plead a plausible claim of race or age discrimination under the Fourth Circuit's standard in *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 583 (4th Cir. 2015). *See* ECF No. 33 at 10-13.

On August 19, 2015, Kamatta moved for reconsideration and requested leave to file an amended complaint. ECF No. 36 at 1.

---

[8] In her reply, Burwell abandoned her Rule 12(b)(1) argument based on the Fourth Circuit's holdings in *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) and *Sydor v. Fairfax Cnty.*, 681 F.3d 591, 595 (4th Cir. 2012). *See* ECF No. 30 at 4 ("DHHS will not continue to press forward with the exhaustion argument."). Therefore, the Court did not address the parties' subject matter jurisdiction arguments. *See* ECF No. 33 at 6.

6

The proposed amended complaint provided information about four alleged comparators and detailed occasions during which Nuss allegedly yelled at African American employees. *See* ECF No. 36-3 at 7-8. On September 4, 2015, Burwell opposed the motion for reconsideration. ECF No. 37. On September 21, 2015, Kamatta replied. ECF No. 38.

II. Analysis

  A. Legal Standard

Although the parties focus their arguments on the standard for altering a court's scheduling order, because the Court previously dismissed Kamatta's claims with prejudice, Kamatta's motion for reconsideration implicates two different standards. *See Hinks v. Bd. of Educ. of Harford Cnty.*, 2010 WL 5087598, at *1 (D. Md. Dec. 7, 2010) ("Hinks seeks reconsideration of this Court's dismissal of his claims with prejudice, so that his motion for leave to file a second amended complaint may be considered.").

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. *Auto Services Co. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008).[9] However, a party may move for relief from an interlocutory order under Rule 54(b). Federal

---

[9] *But see* Local Rule 105.10 (D.Md.2014) ("Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider issued by the Court shall be filed with the clerk not later than fourteen (14) days after entry of the order.").

7

Rule of Civil Procedure Rule 54(b) states that "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).[10]

When deciding a motion for reconsideration of an interlocutory order, the Court may consider, but is not bound by, Rule 60(b).[11] *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991). Resolution of the motion is "committed to the discretion of the district court," *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003),[12] and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted). A court must be mindful that routine

---

[10] *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009).

[11] Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

[12] "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe*, 326 F.3d at 514 (*citing* 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.04[3] (3d ed.) ("Rule 60(b) does not govern relief from interlocutory orders . . . .")); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

reconsideration of interlocutory orders would undermine judicial economy and respect for the finality of decisions. *Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, 2010 WL 3522476, at * 2 (W.D. Mo. Sept. 2, 2010).

As the parties address, Kamatta's motion also implicates the standard for modifying scheduling orders. Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (when the deadline provided by the scheduling order has passed, Rule 16(b)(4) governs requests for leave to amend); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("[A] court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."). Good cause exists when "the moving party has diligently made efforts to meet court imposed deadlines," or when evidence came to light after the deadline. *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010) (citations omitted); *see also In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429 (4th Cir. 1994) (unpublished table opinion) (good cause found when facts discovered after the amendment deadline).[13] Leave to amend

---

[13] *Cf. Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984) (district court abused its

may be denied when the moving party was careless or failed to explain the reason for failing to properly plead. *See id.* at 769; *Montgomery v. Anne Arundel Cnty., Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party."); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. CIV.A. WMN-10-2336, 2015 WL 628968, at *7 (D. Md. Feb. 11, 2015) (good cause met in light of "changing circumstances," including denial of class certification and "anticipated decertification of the collective action").

"The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant." *Rassoull*, 209 F.R.D. at 374. "Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" *Id.* (quoting *W. Va. Housing Dev. Fund v. Ocwen Technology Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D. W. Va. 2001)); *see also Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995) ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.").

discretion in denying an amendment when evidence for amendment was discovered shortly before trial).

B. Kamatta's Motion for Reconsideration

In this case, the Court issued a scheduling order on January 13, 2015. ECF No. 17. The scheduling order set February 27, 2015, as the deadline for joinder of additional parties and amendment of pleadings. *Id.* at 2. Burwell moved to dismiss on February 20, 2015, seven days before the deadline. ECF No. 22. Kamatta argues that she did not seek to amend the complaint then because she believed that it was unnecessary. ECF No. 36-1 at 5.

According to Kamatta, it was "[o]nly after [Burwell] referenced *McCleary-Evans* in [her] Reply did [Kamatta] learn of the decision" and its possibly negative effect on her case. *See id.* Kamatta, however, did not attempt to address *McCleary-Evans* with the Court "[d]ue to this Court's disfavor with sur-replies." *Id.* Further, Kamatta argues that she was diligent in seeking amendment because she "could not address the deficiencies identified by the Court until the opinion was issued—which was after the deadline to amend passed. Once the Court identified the deficiencies in [Kamatta]'s complaint, she shortly thereafter requested leave to amend her complaint to rectify those deficiencies." ECF No. 38 at 2.

Kamatta's arguments fail to show her diligence in seeking an amendment. First and foremost, Kamatta's failure to recognize *McCleary-Evans* as controlling authority in this

11

circuit cannot provide good cause. Further, once Burwell cited *McCleary-Evans*, and Kamatta recognized its effect, she could have acted immediately. Kamatta states that this Court looks negatively upon surreplies, but nothing prevented Kamatta from filing a motion to amend at that time. The scheduling order deadline for filing an amended complaint may have passed, but moving to amend immediately after learning of *McCleary-Evans* may have shown diligence with little or no prejudice to Burwell.

Instead, Kamatta *chose* to move forward with her complaint as it stood. She made a tactical decision. The Court, however, ruled in favor of Burwell and dismissed Kamatta's claims with prejudice. Now, Kamatta seeks to alter her tactical mistake. This, however, should not provide a basis for reconsideration. *See, e.g., Ackermann v. United States*, 340 U.S. 193, 200 (1950) (denying relief based on "voluntary, deliberate, free, untrammeled choice"); *Schwartz v. United States*, 976 F.2d 213, 218 (4th Cir. 1992) ("[S]trategic decisions made during the course of litigation provide no basis for relief under 60(b)(6), even though with hindsight they appear wrong."); *see also Good Luck Nursing Homes, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (reconsideration may not "be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.").

The focus of Kamatta's argument appears to be that she could not amend her complaint to correct deficiencies until the Court informed her what the deficiencies were. This, however, is not the purpose of a motion to dismiss. Otherwise, dismissals with prejudice on a motion to dismiss would lose all meaning because any plaintiff could use the issuance of the court's opinion as "good cause" for moving to amend the complaint.[14]  *See Marcum*, 163 F.R.D. at 255 (plaintiff was not diligent in seeking amendment because he waited for the court's opinion dismissing his claims even though he had previously considered amending the complaint).

Kamatta also argues that her motion is made with good cause because "through the course of discovery, Defendant produced documentation relating to another African American employee who was harassed by Plaintiff's supervisor, Mary Nuss that Plaintiff could not have previously known." ECF No. 38 at 3. Although newly discovered evidence may provide good cause to amend,[15] it does not support Kamatta's motion in this case. First, Kamatta was supplied with this new evidence on July 13, 2015,[16] yet, she

---

[14] As previously stated, a court must be mindful that routine reconsideration of interlocutory orders would undermine judicial economy and respect for the finality of decisions. *Disc. Tobacco Warehouse, Inc.*, 2010 WL 3522476, at * 2.

[15] *Tawwaab*, 729 F. Supp. 2d at 768-69.

[16] ECF No. 38 at 3.

waited over a month for the Court's decision on the motion to dismiss to move to include this information in her complaint. Kamatta provides no reason for this delay. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 281 (4th Cir. 1987).

Second, the "new evidence" is very limited, and does not provide the core basis for Kamatta's leave to amend. According to Kamatta, she was given documentation on July 13, 2015 about "a formal complaint of discrimination filed by a Brenda Mitchell, a former African-American employee of Ms. Nuss." ECF No. 38 at 3. Kamatta asserts that "[w]ithout this document, Plaintiff would not have been able to substantiate her allegation that Ms. Nuss repeatedly yelled at the African-American Ms. Mitchell, which Plaintiff incorporates into her claims under Count I." The Court, however, did not dismiss Count I because Kamatta failed to support that Nuss had yelled at other African Americans. The Court dismissed the racial discrimination claim because Kamatta failed to provide sufficient information about her alleged comparators for the Court to conclude that Kamatta was discriminated against because of her race. *See* ECF No. 33 at 11-13. Now, Kamatta proposes an amended complaint with specific information about comparators. *See* ECF No. 36-3 at 6-7. Yet, Kamatta does not inform the Court how or when she discovered this information. *See Island Creek Coal Co.*, 832 F.2d at 281; *cf. Nat'l Bank of Wash. v. Pearson*,

863 F.2d 322, 327-28 (4th Cir. 1988) (district court properly denied leave to amend when there was evidence of undue delay, bad faith, and prejudice because the movant waited four years to move to amend and provided no explanation for the delay). Thus, "newly discovered evidence" cannot provide the basis for the relief Kamatta seeks.

Finally, Kamatta's motion for reconsideration is untimely. Under Local Rule 105.10, a party must file a motion for reconsideration within 14 days of the entry of the adverse order. Although "[t]here is a strong judicial preference that cases be decided on their merits and not on the basis of procedural defaults,"[17] Kamatta's failure to meet this deadline further emphasizes her lack of diligence in seeking amendment.

III. Conclusion

For the reasons stated above, Kamatta's motion for reconsideration will be denied.

__1/13/16__
Date

__/s/__
William D. Quarles, Jr.
United States District Judge

---

[17] *Mills v. United States*, 2012 WL 718839, at *4 (D. Md. Mar. 5, 2012).